UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **FIRST BAPTIST CHURCH OF IOWA LOUISIANA** | **CASE NO. 2:21-CV-02472** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHURCH MUTUAL INSURANCE CO S I** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM RULING

On August 6, 2024, the Fifth Circuit remanded this Court's Judgment[1] with instructions to amend the Judgment. The Fifth Circuit found that "awarding damages based on prices in January 2023 instead of at the time of loss and in awarding any damages for slab repair and damages in excess of $4,500 for the sanctuary's electrical repair, we REVERSE that position of the district court's decision and REMAND for recalculation of damages."[2]

The Court had a hearing on September 10, 2024, and requested that the parties file memoranda to specifically address its position as to the recalculation of damages. It appears that the parties do not agree on the how much the total electrical damages are for the entire church building, reducing the Church sanctuary to $4,500, and whether the exact date of August 27, 2020, price list should be used to recalculate the damages, as opposed to the September 2020, price list, which was the only evidence in the record at the time of trial.

---

[1] Doc. 53.
[2] P. 30, Doc. 67.

The parties do not dispute the Fifth Circuit's ruling that the $1,660.65 for slab repairs should be removed from the calculation of damages.

*Price list*

Plaintiff argues that the September 2020 price list should be used to recalculate the damage. Defendant argues that an August 27, 2020, price list should be used. The Court notes that it based its calculation of damages on Cal Chambers's Xactimate estimate dated January 2023. It is this estimate that the Fifth Circuit has instructed this Court to ignore and recalculate damages based on a price list as "of the time of the loss" as expressed in the relevant policy.

Defendant argues that it should be the date of the loss—August 27, 2020—the date of Hurricane Laura's landfall. Defendant suggests that you cannot have a time of the loss without a date of the loss, and because "time" is "measured by time of day, which occurs on a date, the date occurs in the year, the year occurs in a decade, and so forth. Otherwise, there is no temporal logic."[3] Defendant attaches to its Memorandum an estimate it proposes has the "correct date or time of loss"[4] It should be noted that this estimate was not admitted, not attempted to be admitted at the trial of this matter.

Plaintiff maintains that the September 2020 pricing employed in the revised Chambers' Xactimate is the most appropriate pricing for the recalculation of damages. Plaintiff argues that the September 2020 is more sensible, because it is based on pricing about 4 days post-loss. Additionally, it is the only estimate offered at the trial of this matter

---

[3] Doc. 81, pp. 2-3.
[4] Defendant's Exhibit, Doc. 81-4.,

by Defendant and is the O'Steen estimate that employs the exact same September 2020 price list that Plaintiff used in the revised Chambers' estimate. Plaintiff also remarks that Church Mutual acknowledged at the September 10, 2024, hearing that the September 2020 pricing has been adopted by CM in other proceedings emanating from claims for loss following Hurricane Laura, with the same policy language. More significantly, Plaintiff contends that the August 27, 2020, price list Defendant is trying to persuade the Court to use was not admitted in the record at the trial of this matter.

      Here, the Fifth Circuit referred to the policy language that expressly states that the valuation is at the "time of the loss," but the policy provides no definition of "time." In the Merriam-Webster Dictionary, the term "time" has various meanings, such as "the measured or measurable period  during which an action, process, or condition exists or continues: DURATION," "the point or period when something occurs," an appointed, fixed, or customary moment or hour for something to happen, begin, or end,." "a historical period: AGE," "a moment, hour, day, or year as indicated by a clock or calendar" etc.

      To recalculate the damages from the Defendant's perspective would require the Court to use information Defendant did not have admitted at the trial of this matter. The Court finds that this would be inappropriate considering the record has been closed and Plaintiff did not have this information during the trial.  Therefore, the Court will use evidence of a September 2020 price list that was admitted into the record during the trial and also at the later hearing to recalculate the damages.  Thus, the September 2020 revised Chambers' Xactimate estimate will be used to recalculate the damages.

*Reduction for electrical repairs*

The total electrical repairs were $164,234.42, which included removal and repair for the entire Church building that encompassed the main sanctuary as well as all offices, and/or other rooms, or as the Fifth Circuit referred to as "the remainder of the Church."[5] Defendant argues that the total electrical repairs for the entire Church Building should be reduced to $4,500.00. Plaintiff argues that only the electrical repairs to the main sanctuary of the Church Building should be reduced to $4,500.00, but that the Church is still entitled to an award for the electrical repairs for the remainder of the Church.

The Fifth Circuit determined that Plaintiff was only entitled to the $4,500 that Mr. Guidry charged the Church for the electrical repairs to the sanctuary. The Fifth Circuit understood that Mr. Guidry's work only included the sanctuary but not the electrical repairs to the remainder of the Church building.[6] The Court agrees with Plaintiff that the Fifth Circuit's instruction was to limit the electrical repairs to the sanctuary to $4,500.00, but that the electrical repairs to the remainder of the Church were still intact. In other words, the Plaintiff's damage claim and award for the electrical repairs to the remainder of the Church Building should not be removed.

Plaintiff has used evidence in the record to make the reduction to $4,500.00 for the sanctuary. The total amount of electrical repairs for the Church building that was in the

---

[5] Doc. 67, p. 17.
[66] The Fifth Circuit stated that:
> The electrician who performed that work, Dylan Guidry, testified that he removed and replaced all the electrical wiring in the sanctuary, but he never submitted a bid for the remainder of the church building. Although he initially submitted a $26,800 bid for the sanctuary work, including materials and labor, he ultimately did not charge FB Church for labor, and Guidry ultimately charged FB Church only $4,500, which it paid. *Id.*

estimate and awarded by this Court was $164,234.52. The estimate also notes that the square footage for the entire building is 7,459.67. At the hearing, Plaintiff provided the Court a revised estimate that included electrical repairs for the remainder of the Church Building which reflected that the square footage was 5,034.00 and the amount for removal and replacement of the electrical system to be $90,396.17. The Court has added to that number, the $4,500.00 for a total of $$94,896.17 for electrical repairs to the entire Church Building, including the sanctuary.

Considering the Fifth Circuit's instructions, the Court has recalculated the Main Church building damages to be $781,428.14. This amount adjusts the damage to account for a September 2020 price list,[7] excludes the slab repair in an amount of $1,660.65, and reduces the Main Sanctuary electrical repairs to $4,500.00, but leave intact the electrical repairs to the remainder of the Church as indicated by the Fifth Circuit.

The Court's recalculation is as follows:

| | |
|---|---|
| Church Building, as adjusted | $781,428.14 |
| Parsonage | $ 75,188.26 |
| Building 3 | $ 65,000.00[8] |
| Contents and Business Personal Property | $107,503.52 |
| SUBTOTAL | $1,029,119.92 |
| | |
| LESS: | |
|     Temporary Roof | ($10,520.06) |
|     Parsonage Roof | ($ 2,412.92) |
|     Tree Limb adjustment | ($ 3,000.00) |
|     Deductible | ($61,800.00) |
| TOTAL LOSS | $951,386.94 |
| PENALTY AT 50% | +$475,693.47 |
| LESS PAYMENTS | ($329,226.64) |

---

[7] Doc. 70-3.
[8] Per Policy Limit of $65,000.00.

| | |
|---|---:|
| SUBTOTAL | $1,097,863.77 |
| ATTORNEY FEES AT 30% | +$329,356,13 |
| **TOTAL AWARD** | **$1,427,209.90** |

## CONCLUSION

For the reasons explained herein, the Court has made the recalculations and will award judgment in favor of First Baptist Church of Iowa and against Church Mutual Insurance Company, SI as noted hereinabove.

**THUS DONE AND SIGNED** in Chambers on this 17th day of October, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE